Good morning judges, may it please the court, my name is Michael Nash, and I'm here on behalf Mr. Driggers went to trial in the case that you just heard. He was found guilty of one count, not guilty of the other count. During the trial, the government offered the evidence that because there had been phone contacts between Mr. Driggers and a fellow by the name of Gates, that it was allowed to offer evidence that stolen guns were found in Gates' storage unit, and therefore Mr. Driggers sold him those guns. We objected. So I know you've made that point, and I certainly understand the point. There could have been a lot of phone calls, and maybe they were planning their next robbery or something. Maybe they weren't talking about what to do with these guns. I wanted to ask you what you think the remedy is. Suppose the government did take entirely irreconcilable positions in Driggers' case and Gates' case about where Gates got the guns, basically. Because I know we've got the language in the Gates plea agreement, we've got other things. Does that get Driggers off the hook? Why should it? I don't think the government can take contrary conflicting theories and prosecute one case on Tuesday and another on Wednesday. I just think that's wrong. I don't know that we have to look at much law to find that out. You can't say it's black on Tuesday and white on Wednesday. Didn't the jury take care of that by acquitting on the receiving stolen property? Far beyond my ability to say why the jury did what it did. But the fact is that they certainly had doubts about the informant. That's the only thing that I could draw from it. But they convict on just possession of a firearm, right? Yes. And couldn't they convict on that? Wasn't there evidence that's not subject to this complaint that he had at least the one firearm, the one Ruger? They found the one gun in the store that he's a co-leasee with the other fellow, Yashim Odin. Right. But at least it's in his store. It's connected to him. That bothered me less because a jury could infer from his contact with the store that he was in possession of that gun. Remember when they're talking about... But maybe not think it was stolen. Maybe think it had nothing to do with this whole robbery. Wouldn't that reconcile the verdicts? I don't think it would, Judge. But when we're here trying to theorize what the jury did, I think that we're on a very... Well, I'm not quite doing that. I'm saying isn't there evidence in the record from which a rational jury could draw the inference that that gun in the store was possessed at least by Mr. Driggers, if not by Odin as well? I mean, this is all this dance about joint possession. But the evidence was centered on the testimony of Mr. Turner, who said that he sold these guns to Mr. Driggers. But maybe the jury didn't... Obviously, this evidence is impeached, right? If the jury didn't feel comfortable going with the Driggers to Gates bank, maybe they moved back and said, well, there was the one gun in the store and he was a joint possessor of it. Well, so was Odin. Equally possible that Odin had it. If you disregard Turner, it's a flip of the coin. Or both. I mean, it's back and forth. Well, there's no evidence connecting Odin to the gun, to the sale. None. Their case is about the sale. If the sale didn't take place, they lose, we win. And in order to make Turner more believable, they wanted to show that Gates had these guns. Gates was similar to Driggers, and Driggers sold them to Gates. And there's absolutely no evidence in their brief before this court. They say it could have happened. It was a possibility. They allowed the district judge to conclude that the guns found in Gates' storage units were previously in his possession when they knew that isn't the case. No, I... Well, I mean, one story or the other is going to be true. I don't know why we have to assume the first one's true and the second one isn't or vice versa. But the gun in the store has a serial number also matching when it's stolen. It was a stolen gun, yes. So it just seems to me that looking at it from the point of view, given that this is a jury verdict, the jury could have felt much more comfortable with that than trying to trace what happened to the rest of the guns after they were in the store. Whether they got sold to Gates by Driggers, whether some of them were sold by these other two guys. Maybe the government's thrown out the idea maybe additional guns got sold by Driggers. A lot of things could have happened, but I can easily see the jury feeling uncomfortable with that. But all the things you mentioned come from Turner's testimony, basically, about the sale. The jury could credit that, right? They could have, but for some reason they didn't across the board. And what we're talking about is the use of Gates' testimony to enhance Turner's credibility and cooperation. How much of that did the government actually do? That is, explicitly draw for the jury this connection that Gates got the guns from Driggers? In the opening-closing argument, they stated it's in my brief, the page number of the transcript. And they say you can use that to find that Driggers possessed the guns. And when they filed their response to the post-trial motion, that's what they argued. The jury could find from Gates' evidence that those guns were in Driggers' possession beforehand. And unfortunately for the district judge, and I don't think this would have been the case if he had realized it, that their agent had testified before the grand jury that Gates got them someplace else. In the plea agreement for Gates, who Judge Starb sentenced, it said that he got them from people's enlistment. But most importantly, the government told the district court that Driggers sold them to 20 of the 29 guns to unknown persons. That's what they said in the government's version of the offense, which they sent to the judge about two weeks after the jury verdict. So it's not me saying that, that's them. They can't say one thing on Monday and another thing on Tuesday. The other thing is about the joint possession. There's no discussion here of joint possession. There's no theory of joint possession. It's whether Turner sold them the guns. That's their case. There's no joint possession there. But again, they want that little edge to give the jury a chance maybe to find it on lesser proof, lesser evidence. That's what that does. It allows them to say, oh, just like Your Honor, Judge Wood concluded, well, they can conclude that the gun in the store, that's joint possession maybe. This isn't the case of joint possession. No, I followed that argument. I mean, your notion was that it was either A or B, but not A plus B. And they're saying by the time you bring B in, the jury might think that there was joint possession. So we need this as a protective measure for the jury so they don't get confused. If you would like to save a little time. I would. You can do that. Thank you. Thanks. Mr. Parente, welcome back. May it please the Court, my name is Chris Parente and I represent the United States. So the government's position is very disturbing about these guns. Judge, I think I can offer the Court some clarity here. First off, the only objection at trial to this evidence was on a relevance ground. And here's why it was relevant to the government's case. What we know about Warren Gates is he was an individual who purchased many of the stolen guns from at least two of the actual train robbers. Okay? The defendant, we had the defendant's... That's Peoples and Lipscomb. Peoples and Lipscomb. Correct. Mr. Gates is not cooperating. We have no idea who else he might have bought guns from. He's not. He pled guilty. He's not cooperating. What's the importance here was, and the reason this was relevant at the trial, was we had Mr. Driggers' phone records. Thousands and thousands of calls from January 1 of 2015 to April 12 of 2015, the date that he bought 30 stolen guns. He has no single contact with Mr. Gates. The first time he ever calls Mr. Gates is the day after we allege he just bought 30 stolen guns. But why? I mean, it seemed to me that this was a huge leap. I mean, you regard this as open and shut evidence that they were discussing disposal of the guns. And I can think of a thousand things they could have been talking about. Not necessarily that. It seems usually the government's got an informant, or they've got tapes, or they've got intercepts. They've got something. It's like there's a phone call or 49 phone calls. That's why we didn't charge him with this, but we certainly think it's relevant. It has any tendency to make a fact more probable. It's a brick in the wall. You haven't called this man ever. We know this man was in the market that same day to buy these illegal guns because we know he bought 17 other from two other of the robbers. The fact that you call him on the same day he's buying some of these stolen guns, from my perspective, Judge, that's completely relevant. Relevant, not dispositive, to the fact that that call could be about him selling those guns to him. Why isn't that something that might be better called completely speculative? You have no evidence. Okay, so they're in touch with each other. That shows he bought the guns? Well, it's the timing, Judge. It's the fact that, again, in five months you've never spoken to this person. The first time you speak to him is the day after you buy 30 of these stolen guns, and we can prove that this man is in the market to buy those stolen guns. But doesn't the plea agreement with Gates counteract that? In Gates's sentencing memorandum, the government says of the 17 stolen firearms purchased by the defendant, that would be Gates, law enforcement gets six of them. Gates purchased approximately 17 stolen firearms from Peebles and Lipscomb. Which is true. And so I don't see where the extras are. I don't see where the alleged triggers purchases are. Here's all we know, Judge. You said that he purchased 17 and he purchased all 17 from Peebles and Lipscomb. He did purchase 17 from Peebles and Lipscomb. The problem is this, Judge. Because of the nature of these sales, we don't know which guns he bought from whom, right? Because all we know is the serial numbers. I understand, but the way I read this, of the 17 stolen firearms purchased by the defendant, purchased by Gates, I read in the English language that Gates bought 17 firearms. He did. And I also read your next sentence to say he bought 17 firearms from Peebles and Lipscomb. He did. So I don't know where firearms 18 through 25 come into the picture. We can't prove that, Judge. No, you don't have any evidence either that Gates bought any more or that he bought them from Driggers. It's just they're having a lot of phone calls. As I said, they could have been planning the next robbery for all I know. Absolutely they could have. Absolutely. And that's why we didn't charge this. But I think what's important is even if he didn't buy any, let's say he didn't buy any. Let's say we have evidence that he didn't buy any from Driggers. I would argue it's still relevant because it could have been an attempt to sell it to Driggers. The fact that you don't contact a guy that we know is in the market for at least 17 of the stolen guns, the fact that the first time you ever reach out to this person and then you have 46 additional contacts in the coming days, to me that's at least— And by the way, 46 is not thousands. But anyway, it's— It's not thousands. You said thousands earlier, which seemed excessive. I'm sorry. I misspoke if I said thousands. There's definitely not thousands. It was 46. But it's the timing of the contact judge coupled with the fact that we know this person that you're contacting for the first time in a five-month period, the day after you buy 30 of these, is the guy that was in the market for it. All we're seeing is it meets the relevance bar, which is very low, as Your Honor knows, and which was the only objection at trial. So the court, when the district court heard this, agreed. It's certainly relevant, as Your Honor says. There could be a million other reasons for those calls. But the timing, it's at least a fair inference for a juror to say that if you don't talk to this person for five months but your first call is within 24 hours of buying 30 stolen guns, that's at least over the four—in the government's position. But the point of all of this is just to show that Driggers is a felon in possession. Right. But we charge him with possession of 30 guns. We only had one by the time we did the search. So the question, if you're on the jury, is, well, where are the other 29? That's the reason this was relevant is because we're missing the 29 guns. And that's the count the jury's not persuaded? Let me talk about that. So there's two things here, right? The way that this could have worked out, if we're reading the minds of the juror, is to prove guilt on count two, which is possession of the stolen guns, there's an additional element. It's not just possession. You have to prove that Mr. Driggers knew the guns were stolen. Arguably, some jurors could have said, hey, these guns are still in the box. Maybe he thought they were likely they were stolen, but he didn't actually know. The government didn't prove that he knew they were stolen. So we agree, Mr. Turner, we believe, Turner, that he sold them 30 guns, but the government didn't get above that next step of proving that the defendant, at the time he bought those 30, knew that they were stolen. That's where you could have the compromise verdict that you have here because there is an additional element on count two. Mr. Parente, I confess that in thinking about this problem, I was wondering if you didn't have a witness go south on you somewhere, that you expected to be able to link these up more than you actually did. No, Judge. This is it, okay? Because, again, I think at the trial we actually had the phone records printed out. You have thousands of calls in a five-month period. To me, it's compelling that the first time you ever reach out to this person, who we can prove was in the market for stolen guns, is the day after our witness just said he sold you 30 of the stolen guns. Where are the thousands of calls? I'm sorry, thousands of calls between other people. This is a defendant who uses his phone all the time. That's where the number comes from. And that's relevant? That he uses his phone a lot? Because he never called this person before. That's why it's relevant. So he's using this phone to call thousands of people, never calls the person who we can prove is in the market for stolen guns until the day after he buys 30 of them. And we're trying to show where did the 29 guns go? It's just a relevance. It's definitely not beyond a reasonable doubt, but we certainly think that it's relevant and it has some tendency to establish what we're trying to show, which is where did the 29 guns go? Okay. If there's no more questions on that issue, I'll turn to the joint possession issue. Again, Judge, the opening statement of defense counsel was, quote, the store they talked about when they go into, there's another person who has access to the store and they know there's another renter, Mr. Odom, so the defendant does not have exclusive possession. That alone in the government's position opens the door to at least the instruction on joint possession. And that wasn't the only reference. The entire trial was about Mr. Odom. His mail was found in the store. He was a co-leaser. They cross-examined the landlord. They brought out this idea that there was another person who had access to the store. We would argue that alone is enough to justify a joint possession instruction. You also have the... They find this gun in a tire somehow? Yeah, it's hidden in the back of the store inside a tire. There's also a mystery fingerprint on the gun that they... Well, it's not a mystery. I mean, somebody says, oh, I know whose fingerprint that is, and then that never comes out? It's nobody in the case, Judge. It's somebody's, but it's not... A known somebody's. It's a known somebody, but not known to the jury, not identified in court. And there's reasons for that. But the issue, the point of that is that it means that someone else touched the gun. So the jury could think, well, if someone else touched it, then the defendant can't possess it, and that's not correct. It just is another reason to give a joint possession. Even if you believe that someone else touched the gun or may have touched the gun, you have another option here, because two people could possess a gun. And then there was the testimony about the employee who might have helped unload the guns. We think that, as well, justified a joint possession instruction. If there's no more questions, we'd ask you to affirm the... All right, thank you. Mr. Nash. He tells the court that the explanation about the stolen guns, or the jury's verdict on the stolen guns, was that perhaps he didn't know they were stolen. But he then says, in the very next breath, that he's talking about the stolen guns with... He was in the market for stolen guns. He knew that Gates was in the market for stolen guns as a justification for Gates's evidence. That doesn't make sense. And I can't stress enough, I think I heard the government mention could have up here, it could have been this, it could have been that. Must have been six or seven times. Could have and possibility is not proof. It doesn't even make it relevant. Your Honor, Judge Wood, you mentioned the word speculative. That's all it is. It isn't that there were phone conversations. We don't even know that they spoke. Only thing the witness said is that there were these contacts. I think he said 38 or something like that between April 13th and some other date. We don't even know that they spoke. And they want to draw the conclusion that they're discussing stolen guns and one step further, that he sold them stolen guns. And they say otherwise, in other pleadings, he didn't. I don't know what could be clearer. I think I should be sitting there and he should be sitting here. Thank you. Thank you very much. And you took this by appointment, I believe. We appreciate your service to the court and your client. Thank you as well to the government. We'll take the case under advisement.